UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No.  2:12-cr-00315 JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT WOODARD'S MOTION TO DISMISS AND MOTION TO SUPPRESS** |
| LEE LOOMIS et al., | |
| Defendant. | |

This matter is before the Court on Defendant Peter Woodard's ("Defendant") Motion to Dismiss (Doc. #168) and Motion to Suppress (Doc. #168).  The Government has opposed Defendant Woodard's Motion to Dismiss (Doc. #177) as well as his Motion to Suppress (Doc. #176).  The Court heard argument from both parties on July 22, 2014.

I.   FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 2012, Defendants Lee Loomis, John Hagener, Darren Fehst, Michael Llamas, Peter Woodard, Joseph Gekko, and Dawn Powers were charged in an indictment alleging 19 counts of mail fraud in violation of 18 U.S.C. § 1341 and 31 counts of wire

1

fraud in violation of 18 U.S.C. § 1343.  Generally, the indictment charges Defendants with engaging in schemes of investment fraud and mortgage/real-estate fraud.  Defendants Hagener, Gekko, and Powers have since pleaded guilty.  Defendant Fehst remains a fugitive.  A jury trial for Defendant Loomis – on counts 1 through 23 – is set for October 6, 2014.  A subsequent jury trial for Defendants Loomis, Llamas, and Woodard – on counts 24 through 50 – is set for March 30, 2015.

## II.   OPINION

### A.   Motion to Dismiss

Defendant Woodard argues that the Court must dismiss the indictment against him because "a promise made by the Government to not charge the defendant went unfulfilled."  Mot. at 16.  In a lengthy narrative, Defendant claims that both Investigator Lessler and AUSA Carlberg promised that he would be not be charged with a crime if he cooperated with investigators.  Mot. at 10-16.  The Government responds that Defendant was never promised that he would not be indicted, and that, even if Defendant's allegations were true, dismissal of the indictment would not be warranted.  Opp. to Woodard MTD at 2.

"[T]he responsibility of federal prosecutors meticulously to fulfill their promises" is well-established.  United States v. Hudson, 609 F.2d 1326, 1328 (9th Cir. 1979).  "Fundamental fairness requires that promises made during plea-bargaining and analogous contexts be respected."  Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985).  To warrant dismissal of an indictment based on the Government's promise not to prosecute, two

2

conditions must be satisfied: "(1) the agent must be authorized to make the promise; and (2) the defendant must rely to his detriment on that promise." Johnson v. Lumpkin, 769 F.2d at 633; see also, United States v. Johnson, 2013 WL 1981356 (E.D. Cal. May 13, 2013) (dismissing indictment based on prosecutor's promise to defendant, prior to grand jury testimony).

As Defendant's and Investigator Lessler's versions of events differ significantly, an evidentiary hearing would be required if Defendant's version were sufficient to warrant dismissal. If, however, taking Defendant's version at face value, the alleged statements made by Investigator Lessler and AUSA Carlberg are insufficient to warrant dismissal, no evidentiary hearing is required. Accordingly, the Court's analysis assumes the veracity of Defendant's affidavit (which adopts the factual narrative in his motion).

The first prong of this test eliminates any statements made by Investigator Lessler from the Court's consideration. Hudson, 609 F.2d at 1329. Investigator Lessler was not authorized to make charging decisions on behalf of the U.S. Attorney's Office, and therefore his statements were not binding. Even if he told Defendant that, if he cooperated, "nothing will happen to you," and that "everything will be fine," in response to Woodard's question whether he would be charged, Investigator Lessler had no authority to make such promises. Mot. at 14. Under Hudson, Defendant is not entitled to dismissal where "a federal agent is alleged to have made a promise clearly outside his authority." Hudson, 609 F.2d at 1329. Moreover, Defendant's contention that he "reasonably believed [the promise] was within the Agent's

3

authority" is unavailing.  Mot. at 19.  The "authority" test is objective, not subjective: it matters not what Defendant "reasonably believed," only what Investigator Lessler was actually authorized to do.  Hudson, 609 F.2d at 1329 (noting that there was "no allegation that the United States Attorney knew about the alleged promise or that such acts by [the agent] were sanctioned by the prosecution," and not discussing Defendant's subjective beliefs).  As Investigator Lessler was not authorized to make charging decisions, his statements to Defendant are immaterial.

Conversely, it is undisputed that AUSA Carlberg had the authority to make promises that Defendant would not be charged. However, Defendant must also establish that he detrimentally relied on AUSA Carlberg's promise.  Hudson, 609 F.2d at 1329.  In relevant part, Defendant's motion alleges that the following exchange occurred:

> "While [Defendant] was signing the report, AUSA Carlberg told [Defendant] and his wife "We know you're good people.  You got mixed-up with the wrong guy." AUSA Carlberg went on to vilify [Defendant Llamas] and telling [Defendant and his wife] that Llamas had used them.  When AUSA Carlberg was done speaking Peter asked "What happens now?"  AUSA Carlberg said, "The worst thing that's going to happen to you is you'll get some media attention after we charge everyone else."  Mot. at 16.

Importantly, by Defendant's own account, AUSA Carlberg's statement came *after* Defendant had signed the report, admitting to his involvement in the matter, and *after* his wife had testified in front of the grand jury.  Accordingly, neither of these acts can be characterized as "detrimental reliance" on AUSA Carlberg's *subsequent* statement that the "worst thing that's

4

1  going to happen" is some negative media coverage.  Hudson, 609
2  F.2d at 1329.  Defendant took no other actions that could be
3  characterized as detrimental reliance on AUSA Carlberg's promise.
4  Mot. at 16.  Therefore, Defendant Woodard has failed to show that
5  the indictment must be dismissed under Hudson, and his motion to
6  dismiss is DENIED.

      B.   Motion to Suppress

8  Defendant Woodard moves to suppress admissions made to a
9  federal IRS investigator at his home, on the grounds that he was
10 not Mirandized before making them.  Mot. at 20.  Defendant argues
11 that he was in custody, despite the fact that he was interrogated
12 in his own home.  Mot. at 20.  The Government disputes the
13 veracity of a number of Defendant's allegations about the
14 interrogation.  Opp. to Mot. to Suppress at 2.  Moreover, the
15 Government argues that, even if the facts set forth by Defendant
16 were true, he was not in custody during the interrogation.  Opp.
17 to Mot. to Suppress at 2.

18 As with Defendant's Motion to Dismiss, the Defendant's and
19 the Government's versions of events involved in this Motion
20 differ significantly. Under these circumstances, an evidentiary
21 hearing would normally be required if Defendant's version were
22 sufficient to warrant suppression.  If, however, taking
23 Defendant's version at face value, the alleged circumstances of
24 his interrogation are insufficient to warrant suppression, no
25 evidentiary hearing is required.  Accordingly, the Court's
26 analysis assumes the veracity of Defendant's affidavit (which
27 adopts the factual narrative in his motion).

28 Defendant Woodard claims that, on February 8, 2011, FBI

5

1   Investigators Lessler and Gonzalez arrived at Woodard's residence
2   unannounced.  Mot. at 10.  When Woodard came to the door, the
3   investigators flashed their badges and said, "we're gonna come in
4   to talk."  Id. at 10.  The investigators were "clearly armed."
5   Id. at 10.  The three individuals sat in Woodard's dining room,
6   and Woodard explained some background information about his
7   relationship with Loomis.  Id. at 10.  At one point, Investigator
8   Lessler "exploded."  Id. at 11.  He "leaned forward and glared at
9   [Woodard] menacingly.  In an aggressive and loud voice Agent
10  Lessler told [Woodard] 'You committed wire fraud!  You committed
11  mail fraud!  You committed bank fraud!  You could be indicted.
12  Your wife could be indicted.  She's part of this fraud too.  Your
13  family is in trouble.'"  Id. at 11.  Woodard began to explain his
14  involvement with Loomis, and Investigator Lessler's demeanor
15  changed, as he explained to Woodard that they were "trying to
16  throw you a life-line here" as long as he cooperated.  Id. at 12.
17  Defendant claims that this interaction lasted for seven hours and
18  that he was alone the entire time.
19       The Ninth Circuit has held that the following factors are
20  relevant in determining whether a defendant is in custody, for
21  purposes of Miranda, when he is interrogated in his own home:
22  "(1) the number of law enforcement personnel and whether they
23  were armed; (2) whether the suspect was at any point restrained,
24  either by physical force or by threats; (3) whether the suspect
25  was isolated from others; and (4) whether the suspect was
26  informed that he was free to leave or terminate the interview[.]"
27  United States v. Craighead, 539 F.3d 1073, 1084 (9th Cir. 2008).
28       With regard to the first factor, Woodard was interviewed by

two investigators in plain clothes. Mot. at 10. This is significantly less intimidating than the "eight law enforcement officers, . . . [all] armed, some [wearing] protective gear, and some of them unholster[ing] their firearms" seen in Craighead. Craighead, 539 F.3d at 1085. Woodard claims that both investigators were "clearly armed," but does not allege that either unholstered his weapon. Mot. at 10. This factor cuts strongly against a finding that the interrogation was custodial.

With regard to the second factor, Woodard was not restrained, either by physical force or threats. Although the prospect of criminal prosecution was clearly in the air, neither investigator expressly told him that he would be charged if he cut the interview short. This pales in comparison to Craighead, where the defendant was "escorted to a back storage room and the door was closed behind him," with a visibly armed detective in a flak jacket "leaning with his back to the door in such a way as to block Craighead's exit from the room." Craighead, 539 F.3d at 1086. Woodard's interrogation took place in his dining room. Mot. at 10. This factor also cuts strongly against a finding that the interrogation was custodial.

With regard to the third factor, Woodard was interrogated by the federal agents without any other individuals present. However, unlike the defendant in Craighead, he was not actively isolated from others who were originally present. Craighead, 539 F.3d at 1086. Rather, he was interviewed at home, and it appears to be a coincidence that no one else was present. This factor cuts slightly in favor of a finding that the interrogation was custodial.

7

With regard to the fourth factor, Woodard was not told that he was free to leave. However, he was interviewed in the middle of the afternoon at his home, and the interaction did not occur subsequent to the execution of a search warrant, as was the case in Craighead. Craighead, 539 F.3d at 1078. The investigators knocked on Woodard's door, and he answered the door (although he claims they said "we're coming in to talk"). These circumstances make the "free to leave" instruction far less important. This factor cuts somewhat in favor of a finding that the interrogation was custodial.

Defendant argues that three additional factors should be considered: (1) the investigators initiated the contact; (2) the interrogation lasted seven hours; (3) he was confronted with evidence of guilt. Mot. at 23-24. Although courts have found these factors relevant to a determination that an individual was in custody, the circumstances differed significantly from those in the present case. See, e.g., United States v. Lee, 699 F.2d 466, 467 (9th Cir. 1982) (finding that an interrogation was custodial, partially because it "lasted well over an hour," but also because it took place inside an FBI car); United States v. Carter, 884 F.2d 368, 372 (8th Cir. 1989) (finding that an interrogation was custodial, partially because the individual was confronted with "damning evidence of guilt," but also because he was told "no, just stay here"). None of these factors change the fact that Defendant was interrogated in the middle of the afternoon by two plain clothes investigators in his dining room.

Under the "necessarily fact intensive" Craighead inquiry, the Court concludes that Woodward was not in custody during his

1 | interrogation.  Craighead, 539 F.3d at 1084.  Therefore, no
2 | Miranda warning was required, and his admissions are admissible.
3 |     Defendant Woodard also contends that his confession was
4 | involuntary, and its admission at trial would violate due
5 | process.  Mot. at 25.  A confession is involuntary if "a
6 | defendant's will was overborne" by the circumstances surrounding
7 | the confession.  Dickerson v. United States, 530 U.S. 428, 434,
8 | 120 S. Ct. 2326, 2331, 147 L. Ed. 2d 405 (2000).  The due process
9 | test takes into consideration "the totality of all the
10 | surrounding circumstances—both the characteristics of the accused
11 | and the details of the interrogation."  Dickerson, 530 U.S. at
12 | 434.  For all of the factors discussed above, the confession was
13 | not involuntary, and therefore its admission would not violate
14 | due process.  Accordingly, Defendant's Motion to Suppress is
15 | DENIED.

## III.   ORDER

For the reasons set forth above, the Court DENIES Defendant Woodard's Motion to Dismiss and Motion to Suppress:

IT IS SO ORDERED.

Dated: July 28, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

9